**AZUMA N.V. and Michael L. Wyler, Plaintiffs,**

**v.**

**Earl SINKS a/k/a Earl Richards and Ernest G. Barbella, Defendants.**

No. 86 Civ. 0627 (EW).

United States District Court, S.D. New York.

Oct. 10, 1986.

Milgrim Thomajan Jacobs & Lee, New York City (George L. Graff, Lawrence I. Weinstein, of counsel), for plaintiffs.

Nachamie, Kirschner, Levine, Spizz & Goldberg, P.C., New York City (Marc Stuart Goldberg, Perri E. Frosch, of counsel), for defendants.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Azuma N.V. (Azuma), a Netherlands Antilles corporation with its principal place of business in St. Martens, commenced this action against the defendants Earl Sinks a/k/a Earl Richards ("Sinks") and Ernest G. Barbella ("Barbella") to recover upon their written guarantees of payment of a note in the sum of $150,000.00, executed by HME Records, Inc. ("HME") of which Sinks and Barbella are principal stockholders and directors. Upon default in the payment of the note by HME, plaintiffs seek recovery from Sinks and Barbella of the principal sum plus interest and reasonable attorney's fees as provided for by their guarantees.

Plaintiff Michael L. Wyler ("Wyler") asserts separate claims for judgment against Sinks upon allegations of an agreement between them pursuant to which Wyler purchased 50% of the shares of Sound

Lady, Inc. ("Sound Lady") for the sum of $49,000.00 with an absolute right in favor of Wyler to "put" the shares back to Sinks whereupon Sinks was to return the purchase price; that he notified defendant of his intention to relinquish his interest and Sinks refused to accept the tender and return the $49,000.00. A separate claim of failure to accept the return of shares in a put transaction is alleged with respect to the shares of another company, CSI Music Group Corp., in which the amount of the purchase and put was $165,000.00. Jurisdiction over the claims alleged by the plaintiffs is based upon diversity of citizenship.

Sinks and Barbella move for an order dismissing Azuma's action either (a) pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Azuma does not have capacity to sue since it is not authorized to do business in New York State under New York's "door closing statute," New York Business Corporation Law (B.C.L.) Section 1312 or (b) because all matters involved in the action are at issue in proceedings now pending in the United States Bankruptcy Court for the Middle District of Tennessee, where HME, the obligor under the defaulted note, is a debtor in a Chapter 11 proceeding. In the alternative, defendants move that this Court stay or abstain from hearing Azuma's claims on the grounds set forth in (b). Finally, Sinks also moves to dismiss the actions of both plaintiffs against him pursuant to Rule 12(b)(5) because process was not sufficiently served on him.

The plaintiffs cross-move pursuant to Rule 56 for summary judgment on the respective claims against each defendant in support of which they have filed a statement pursuant to Local Rule 3(g).

#### (1) Service of Process Upon Sinks

■ We first consider Sinks' motion to dismiss both plaintiffs' complaints on the ground of improper service, since a favorable disposition would render moot the balance of the motions as to that defendant. Sinks' contention is that the person upon whom service of the summons and complaint was made at his home at Springfield, Tennessee, did not reside there, was not his employee, and had no authority to accept service and that a copy had not been mailed to defendant. Plaintiff contends such service was proper, but to avoid the issue caused service of another summons and complaint to be effected by leaving a copy at Sinks' home with Sinks' son, over 18 years of age, a copy of which was also mailed to Sinks at his home address. Although Sinks denies having received the summons and complaint by mail, such receipt is not necessary under Fed.R.Civ.P. 4(d)(1), which permits service by delivery at defendant's "dwelling house or usual place of abode with some person of suitable age or discretion then residing therein." Sinks does not challenge the allegation of delivery to his son at his residence. Since Rule 4(d)(1) is controlling this case,[1] the motion to dismiss for inadequate service of process is denied.

#### (2) The BCL Claim

■ We next consider Sinks' motion to dismiss the Azuma action on the ground that Azuma lacks capacity to sue because it has been doing business in New York State in violation of the state's B.C.L. Law without having obtained a certificate of authorization.[2] If Azuma is an unauthorized corporation, B.C.L. § 1312 precludes the maintenance of this action, not only in the New York State Courts but also in the Federal Courts located in the State.[3] To support

---

1. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1964).

2. A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees, penalties and franchise taxes for the years or parts thereof dur-

ing which it did business in this state without authority. This prohibition shall apply to any successor in interest of such foreign corporation.
B.C.L. § 1312(a).

3. *Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); *Netherlands Shipmortgage Corp., Ltd. v. Madias,* 717 F.2d 731 (2d 1983).

the claim that Azuma is doing business in New York State without authorization, the defendant refers to the note executed by HMS which states that HMS "hereby promises to pay to the order of Azuma N.V., a Netherlands Antilles corporation having a representative at Loeb, Block and Wacksman, 70 Pine Street, New York, New York, Attention: Charles Block, Esq., the principal amount of ... $150,000.00." Block is a member of the law firm, Loeb, Block and Wacksman representing plaintiffs in this action. Defendant also argues that Azuma has a representative at said firm and that Rene Loeb, another partner of the law firm and one of the three managing directors of the foreign corporation which served as Azuma's managing director, resides in New York; that the law firm serves as Azuma's United States counsel; and that Azuma has a New York bank account.

In opposition to defendants' motion, another partner of the law firm representing the plaintiffs has submitted an affidavit swearing that the only business conducted in New York State by Azuma was the defaulted $150,000.00 loan; that Azuma has no offices or employees in New York, nor does it have a telephone listing or general mailing address in the state; that it neither sells nor solicits the sale of any goods in the state; and that it does not own or rent New York real property.

The issue as to whether or not the nature and extent of Azuma's activities in this state constitute doing business so as to come within the prohibition of B.C.L. § 1312 must be decided on its own facts. For Azuma to be doing business here—an issue different from whether it is subject to the in personam jurisdiction of the New York Courts—it "must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose."[4] Based upon this standard New York courts have consistently held that in order for the activity of a foreign corporation to constitute doing business in the state, it must be continuous, ongoing, and regular.[5] Under this test, the single transaction referred to above clearly does not constitute business activity by Azuma within the State of New York on a continuous, ongoing or regular basis. The fact that it has a New York bank account or that one of the partners of the law firm representing Azuma is an officer of the foreign corporation which serves as managing director of Azuma is a New York resident do not require a different result.[6] Accordingly this branch of defendants' motion is denied.

(3) The Motion for Abstention or a Stay

The defendants next move for dismissal of Azuma's action, or alternatively that the Court either abstain from hearing its claims or that it stay this action. The basis for this requested relief is a Chapter 11 reorganization petition in bankruptcy filed by HME on November 8, 1985 in the Bankruptcy Court for the Middle District of Tennessee. An action was commenced ten days thereafter in the United States District Court, Middle District of Tennessee by HME, Sinks, and Barbella. Sinks and Barbella argue that all issues in this action against them are involved in the Chapter 11 proceedings and in the action pending in the Tennessee Court.

The Tennessee action was instituted four days after Azuma had notified Sinks and Barbella of its intention to commence an

**4.** *International Fuel Iron Corp. v. Donner Steel Co.,* 242 N.Y. 224, 230, 151 N.E. 214 (1926).

**5.** *Stafford-Higgins Indus., Inc. v. Gaytone Fabrics, Inc.,* 300 F.Supp. 65, 66 (S.D.N.Y.1969); *Parkwood Furniture Co. v. OK Furniture Co.,* 76 A.D.2d 905, 429 N.Y.S.2d 240 (2d Dept.1980) (mem.); *Continental Shows, Inc. v. Essex County Agricultural Soc'y, Inc.,* 62 A.D.2d 1103, 404 N.Y.S.2d 418 (3d Dept.1978) (mem.); *Colonial Mortgage Co. v. First Federal Savings & Loan Ass'n of Rochester,* 57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dept.1977) (mem.); *Marion Laboratories, Inc. v. Wolins Pharmaceutical Corp.,* 28 N.Y.2d 884, 322 N.Y.S.2d 720, 271 N.E.2d 554 (1971).

**6.** *Cf. Netherlands Shipmortgage Corp. v. Madias,* 717 F.2d 731, 737 (2d Cir.1983) (citing *Lebanon Mill Co. v. Kuhn,* 145 Misc. 918, 261 N.Y.S. 172 (1932)).

action against them to recover on their guarantees. The Tennessee action seeks a declaratory judgment that the promissory note executed by HME and the guarantees of payment by Sinks and Barbella do not reflect the intent of the parties—a contention also advanced in this action referred to hereinafter—that Azuma made the $150,000.00 payment as the initial installment of a promised $2,000,000.00 capital contribution; that notwithstanding the note and the guarantees, the $150,000.00 was not a loan. Accordingly, the defendants contend that the Tennessee action should proceed and this one be stayed.

While the Tennessee action was filed first, this is not a determinative factor. In fact, it is evident that Sinks and Barbella, advised that Azuma intended to commence an action in this District, "jumped the gun," and raced to the Courthouse[7] to gain priority; thus the "time factor" is entitled to little if any consideration on the stay application. Moreover, only HME is a debtor in reorganization in Tennessee; it is not a defendant in this action,[8] where Sinks and Barbella are the sole defendants. The transaction at issue was negotiated and consummated in this District, where Azuma advanced the funds. HME was incorporated in New York State in 1980, maintained offices here, and at the time of the transaction did business in this District and continued to do so until it ran into financial difficulties. Its books and records were kept here until they were moved to a warehouse nearby in New Jersey from which they were shipped in Octo-

ber 1985 when debtor asserts it "moved" to Tennessee. About thirty days after the "move," on November 8, 1985, HME filed the Chapter 11 petition. There is no contention or showing that the records, if required in this District, cannot readily and conveniently be transferred here or copies of relevant portions made. The note and guarantees provide that they shall be deemed contracts made under New York law and contain a forum selection clause that specifies in the event any disputes arise thereunder the parties submit to the jurisdiction and venue of the Supreme Court of the State of New York and the United States District Court for the Southern District of New York.[9]

Upon a consideration of the relevant factors applicable to abstentions or transfer set forth in *Colorado River Water Conservation District v. United States*,[10] and those enumerated in *Schneider v. Sears*,[11] there is no basis for denying Azuma the right to proceed with its action in this District. Indeed in the light of the facts and asserted claims of the parties, it would be inequitable to do so. Accordingly, the defendants' motion to dismiss or stay this action is denied.

#### (4) Plaintiffs' Motion for Summary Judgment Based on the Guarantees

The defendants in opposing the motion for summary judgment contend here, as they do in the Tennessee action, despite the clear language of the notes and the guarantees, that the $150,000 received by HME was not a loan but the first installment of a

7. *National Supply Patent Development Corp. v. American Hospitality Corp.*, 616 F.Supp. 114, 118 (S.D.N.Y.1984); *Brierwood Shoe Corp. v. Sears Roebuck & Co.*, 479 F.Supp. 563 (S.D.N.Y.1979); *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co.* 11 F.R.D. 156, 158 (1951).

8. Azuma made a motion in the Tennessee Court to dismiss for lack of proper venue which the Bankruptcy Judge recommended to the District Court be denied. To date no disposition has been made of the matter.

9. Forum selection clauses are not disfavored in the law. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518, 94 S.Ct. 2449, 2456–57, 41 L.Ed.2d 270

(1974); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) *AVC Nederland B.V. v. Atrium Inv. Partnership* 740 F.2d 148, 156 (2d Cir.1984) ("[T]here can be nothing 'unreasonable and unjust' in enforcing such an agreement; what would be unreasonable and unjust would be to allow one of the [parties] to disregard it") (Friendly, J.); *see also Bense v. Interstate Battery Sys., Inc.*, 683 F.2d 718, 721 (2d Cir.1982).

10. 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1974).

11. 265 F.Supp. 257 (1967).

promised capital contribution of $2,000,000, and they request that the documents "be reformed to represent the actual intent of the parties." In further resisting the motion for summary judgment the defendants allege that both plaintiffs fraudulently failed to provide the balance of the promised capital contribution and that they were fraudulently induced to give the guarantees.

This defense brings to mind Alice's statement to Humpty Dumpty: "The question is whether you can make words mean so many different things." [12] The documents were executed after extensive negotiations and contain many and detailed provisions in the event of HME's default and other contingencies. The guarantees specifically state that "no invalidity, irregularity, or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefore nor any other circumstance which might otherwise constitute a legal or legitimate defense of a guarantor shall affect, impair or be a defense to this guarantee, and this guarantee is a primary obligation of the undersigned." The note was dated May 13, 1985; interest was payable monthly thereafter on the 13th day of each month and the principal sum plus accrued interest was payable one year thereafter, with an acceleration provision declaring the principal due earlier upon default by HME, which in fact occurred in October 1985, following which Azuma declared a default and demanded the principal sum from each defendant. The defendants did not respond to the demand for payment but instead hastened with HME to file their suit in the Tennessee Court, referred to above. Up to that time no contention was ever made, such as advanced in this action, that the $150,000 was a payment on account of a promised $2,000,000 capital contribution nor did the defendants dispute that the notes and guarantees meant exactly what they said. Certain factors by themselves suggest that this defense is contrived. Sinks consulted an attorney with respect to the transaction who suggested that the proposed guarantee be changed from an unlimited to a limited guarantee, a change that was effected. Significantly no affidavit is submitted by this attorney that the documents did not truly reflect the parties' understanding and agreement.

■ However, we need not pass upon the incredible contention advanced by the defendants to avoid their obligations under the guarantees, since New York law clearly forecloses their claims. The attempt to impeach the guarantees by alleged oral agreements runs afoul of New York State's parole evidence rule designed to foreclose such an attempt. One of the oldest and most settled principles of New York law is that a party may not offer proof of prior oral statements to alter or refute the clear meaning of unambiguous terms of written, integrated contracts to which assent has voluntarily been given.[13]

■ The defendants' claims of fraudulent inducement to execute their respective guarantees fall under a recent ruling of New York's highest court [14] which holds that the personal unconditional guarantees of corporate officers given in return for corporate funding are not subject to the defense of fraud in the inducement, lest the defense provide an inducement to fraud. Thus plaintiff has established its right to summary judgment upon the guarantees, subject however to consideration of a separate plea made by Barbella. He asserts

---

**12.** L. Carroll, Through the Looking Glass and What Alice Found There 124 (1916).

**13.** *See, e.g., Newburger v. American Surety Co.,* 242 N.Y. 134, 142, 151 N.E. 155 (1926); *Thomas v. Scutt,* 127 N.Y. 133, 137, 27 N.E. 961, 962 (1891) ("It is a general rule that evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, cannot be received to contradict or vary its terms."); *see also Lee v. Joseph E. Seagram & Sons, Inc.,* 552 F.2d 447, 451 (2d Cir.1977) (citing cases); *Hoh v. Pepsico, Inc.,* 491 F.2d 556, 558 n. 2 (2d Cir.1974); *Chase Manhattan Bank v. First Marion Bank,* 437 F.2d 1040, 1048–49 (5th Cir.1971) (construing New York law).

**14.** *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985).

that he has no present recollection of the documents he executed in connection with the transaction. He states that the signature on the guarantee is not his—that he did not sign the guarantee. He makes no such contention, however, as to the note, which expressly mentions the simultaneous delivery of his guarantee.

■ Azuma counters by referring to the complaint filed in the Tennessee action in which Barbella is a co-plaintiff wherein it is alleged that he and Sinks executed the guarantees and seek judgment that they be reformed. However, he disavows this admission and denies he knew the contents of the complaint; that it was drafted by Tennessee counsel and that its allegations are not binding upon him. Plaintiff to negate Barbella's denial of his signature, relies upon the opinion of a handwriting expert, who upon examination of Barbella's admitted signature on other documents concludes that it is Barbella's signature on the guarantee. However skeptically one might view Barbella's denial of his signature in the light of all the surrounding circumstances, it presents an issue of fact which requires denial of the motion for summary judgment against him.[15] Plaintiff however is entitled to summary judgment against Sinks for the total amount due under the guarantee, that is principal, interest and counsel fees, and judgment may be entered accordingly.

### (5) The "Put" Claims Against Richards

■ With respect to the causes of action asserted by Wyler, despite the clear and explicit terms set forth in a detailed twenty-nine page typewritten agreement, Sinks contends the parties entered into an "oral agreement" whereby it was understood that the "puts" could be called upon by

Wyler only after one year following the execution of the agreement—that is May 1986, rather than upon default by HME which occurred earlier. Sinks further alleges that except for the asserted oral agreement, he would not have entered into the "put" agreement; that Wyler's subsequent conduct in contradiction thereto is at the least a mutual mistake and at best a fraud "perpetrated" upon him and that Wyler should be restrained from exercising the puts prior to the expiration of one year. This oral defense also is foreclosed by New York State's statute of frauds. Wyler is entitled to judgment against Sinks on each claim, as prayed for in the complaint.

### (6) Sanctions

■ There remains for final consideration plaintiffs' request that sanctions be imposed upon defendants' counsel under Fed.R.Civ.P. 11. This clearly is a case where the Rule was intended to apply. In the light of specific provisions in the documents relied upon by plaintiffs, the defenses advanced based upon alleged oral agreements contradictory of the explicit terms of the written agreements are clearly fictitious and fly in the face of well established New York law. No competent attorney could have formed a reasonable belief that the pleading was well grounded in fact and warranted by existing law.[16] One must wonder that lawyers presumably sensitive to their responsibilities as members of the Bar, lend themselves to advancing allegations in derogation of clearly defined agreements. Counsel fees will be assessed against the attorneys under the Rule. Both sides may submit affidavits as to the amount and if counsel request an

**15.** The responsibility of the Court on the motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try issues upon affidavits. *Jaroslawicz v. Seedman,* 528 F.2d 727 (2d Cir.1975).

**16.** *Bartel Dental Books Co. v. Schultz,* 786 F.2d 486 (2d Cir.) *cert. denied,* — U.S. —, 106 S.Ct. 3298, 92 L.Ed.2d 713 (1986); *Tedeschi v. Smith Barney,* 579 F.Supp. 657 (S.D.N.Y.1984), *aff'd,*

757 F.2d 465 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); *see also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985) ("where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated").

evidentiary hearing on this issue, one will be conducted.

In sum, plaintiff Azuma is entitled to enter judgment against the defendant Sinks upon his guarantee; summary judgment is denied as to Barbella. Plaintiff Wyler is entitled to judgment against Sinks upon each of the put claims. Plaintiffs are entitled in the judgment to be entered against Sinks to fees under Rule 11.